7UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CHARLES GOOCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-01030-JRS-TAB |
| | ) | |
| LISA BERGESON, | ) | |
| DR MICHAEL PERSON, | ) | |
| TINA COLLINS RN, | ) | |
| DANA MILLER Physical Therapist, | ) | |
| LYNETTE KING, | ) | |
| JAMALEE EDWARDS, | ) | |
| WEXFORD OF INDIANA, | ) | |
| CORIZON, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY DISCUSSING MOTION FOR SUMMARY JUDGMENT
OF DEFENDANTS PERSON, BERGESON, EDWARDS, COLLINS, KING, CORIZON,
AND WEXFORD**

## I.    Background

At all relevant times, plaintiff Charles Gooch was an Indiana prisoner incarcerated at the

Correctional Industrial Facility (CIF). Mr. Gooch filed this civil rights action on April 3, 2017.

Dkt. 1. This action was consolidated with another action, 1:17-cv-2217-RLY-MPB, on March 12,

2018. Dkt. 41. His third amended complaint, tendered on May 7, 2018, dkt. 48, and filed on June

8, 2018, is the operative pleading. Dkt. 52. The third amended complaint names the following

defendants: 1) Dr. Michael Person; 2) Lisa Bergeson, nurse; 3) Dana Miller, physical therapist; 4)

Jamalee Edwards, M.A.; 5) Tina Collins, R.N.; 6) L. King, A.A.; 7) Corizon Health Care

(Corizon); and 8) Wexford Health Care (Wexford). Mr. Gooch seeks compensatory and punitive damages and injunctive relief in the form of diagnostics and surgery.[1]

Dana Miller filed a separate motion for summary judgment which has been resolved in a separate Entry. The remaining seven defendants seek summary judgment on the claims brought against them. Dkt. 85. Briefing was extended to allow the Court to recruit counsel to assist Mr. Gooch. Counsel was recruited on May 2, 2019, and August 15, 2019. Dkt. 137; dkt. 152. The Court greatly appreciates recruited counsel's assistance with this case. Mr. Gooch has opposed the motion, dkt. 147, and the defendants have replied, dkt. 155. For the reasons explained in this Entry, the defendants' motion for summary judgment, filed on February 13, 2019, must be **granted.**

## II. Summary Judgment Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those that might affect the outcome of the suit under applicable substantive law." *Dawson v. Brown,* 803 F.3d 829, 833 (7th Cir. 2015) (internal quotation omitted). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Barbera v. Pearson Educ., Inc.,* 906 F.3d 621, 628 (7th Cir. 2018). The Court cannot weigh evidence or make credibility determinations on summary judgment

---

[1] Any claim for injunctive relief is now moot because Mr. Gooch is no longer confined at CIF. *Jaros v. Illinois Dept. of Corr.*, 684 F.3d 667, 670 n. 3. (7th Cir. 2012); *Koger v. Bryan,* 523 F.3d 789, 804 (7th Cir. 2008) ("once the threat of the act sought to be enjoined dissipates," the claim for injunctive relief must be dismissed as moot).

because those tasks are left to the fact-finder. *Johnson v. Advocate Health and Hosp. Corp.* 892 F.3d 887, 893 (7th Cir. 2018).

### III. Discussion

#### A. Facts

The following statement of facts was evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Mr. Gooch as the non-moving party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Prod.*, *Inc.,* 530 U.S. 133, 150 (2000).

Mr. Gooch received his first ankle-foot orthosis (AFO) in early 2015. Dkt. 148-1 at ¶ 20. An AFO is a mechanical brace that can be worn by a patient with foot drop to keep the foot elevated and to assist with ambulation. Dkt. 88-5 at ¶ 6.

On May 3, 2016, Mr. Gooch was seen for a chronic care visit, at which time he presented with high blood pressure, high cholesterol, and gastroesophageal reflux (GERD) - all of which were being controlled with medication. Dkt. 88-1 at ¶ 6. Mr. Gooch also presented with left-side weakness related to a cerebrovascular accident (CVA), otherwise known as a stroke, that he experienced in 1994 as a result of a motor vehicle accident. *Id.* It was noted that Mr. Gooch wore a brace on his left leg. *Id.* Mr. Gooch was noted as being on bottom bunk/bottom floor status.

On August 31, 2016, Mr. Gooch submitted a health care request form (HCRF) stating he slipped on the stairs near the officers' station because standing water was present. Dkt. 88-2 at 67. He was given Tylenol and ice for back pain. *Id.*; dkt. 88-1 at ¶ 8. He was told to notify medical if his symptoms became worse. *Id.*

On September 8, 2016, Mr. Gooch saw Dr. Michael Person. Dkt. 148-1 at ¶ 6. Mr. Gooch

stated he injured the back of his left knee. *Id.* The examination reflected that ligaments in the knee were intact. Dkt. 88-1 at ¶ 9. Dr. Person prescribed Ultram for pain. *Id.* Nurse Bergeson was present to take vital signs and record orders. *Id.*

Nurse Bergeson is a Registered Nurse (RN) licensed by the State of Indiana since 2013. Dkt. 88-1 at ¶ 2. She began her employment with Corizon on March 17, 2014, as a floor nurse at CIF. *Id.* She was then employed as the Health Services Administrator (HSA) by Corizon from January 8, 2017, through March 31, 2017. *Id.* She remained in that position when Wexford was awarded the medical provider contract beginning April 1, 2017. *Id.*

As an RN, Nurse Bergeson did not prescribe medications or order repairs to medical devices. Dkt. 88-1 at ¶¶ 5, 56. As an RN, Nurse Bergeson did not formulate treatment plans or override the medical judgment of the medical providers. *Id.* As HSA, she was the chief administrative manager of the on-site health services department and, as such, oversaw the administrative duties of the clinic but did not treat or interact with patients. *Id.* In her capacity as HSA for both Corizon and Wexford, her job duties included responding to informal and formal grievances submitted by inmates regarding their healthcare. *Id.* at ¶ 56.

On September 23, 2016, Mr. Gooch was seen by Dr. Person for continued left knee pain under the knee cap. Dkt. 88-4 at 145-47; dkt. 88-2 at 149-153. Mr. Gooch was wearing a knee brace but not all the time. He reported that his pain was less when he wore the brace. *Id.* Dr. Person's evaluation indicated good range of motion, but with pain. *Id.* Dr. Person prescribed a left knee injection and encouraged Mr. Gooch to wear his brace. *Id.* There was no discussion about any issue with his AFO at this time. Dkt. 88-5 at ¶ 9. Nurse Bergeson was present to take vital signs and record Dr. Person's orders. Dkt. 88-4 at 145-47; dkt. 88-1 at ¶ 12. Dr. Person also submitted an outpatient request for physical therapy. Dkt. 88-4 at 143.

On September 23, 2016, Lynette King, administrative assistant, noted that the OPR (outside provider request) for a physical therapist evaluation had been approved. Dkt. 88-4 at 141. During all relevant times, Ms. King was employed as an administrative assistant at the CIF. Dkt. 88-7 at ¶ 2. As an administrative assistant, Ms. King did not have the authority to order treatment or address medical issues. Dkt. 88-7 at ¶ 5. She scheduled outside specialist appointments as directed by medical providers and noted on the inmate's medical chart when the appointment was scheduled. *Id.* She occasionally responded to a HCRF after reviewing a patient's medical record and conferring with a medical provider or nurse. *Id.* She did not formulate treatment plans or override the medical judgment of the medical providers. *Id.*

On October 4, 2016, Mr. Gooch was seen by Dana Miller, PT, for the first of four visits. Dkt. 88-4 at 139-40. She noted Mr. Gooch had left hemiparesis after an earlier stroke and wore an AFO. *Id.* He had been seen by Ms. Miller in January 2015 for issuance of his AFO. Dkt. 148-1 at ¶¶ 19-20. He told her he had received a book of PT exercises that he had been following faithfully until he fell and injured his knee on August 31, 2016. Dkt. 88-4 at 139-40. Ms. Miller noted left thigh atrophy, tight hamstrings and quads, and good patellar mobility (but accompanied by pain). *Id.* Mr. Gooch was issued a written copy of flexibility exercises and strengthening for lower extremities and encouraged to use a stationary bike. *Id.*

Mr. Gooch continued his physical therapy sessions with Ms. Miller in October and November 2016. Dkt. 148-1 at ¶ 9. On October 24, 2016, Mr. Gooch was seen by Tamara Smith for a nurse visit in response to his HCRF complaining of knee pain when he walked. Dkt. 88-4 at 127-29. He said physical therapy was not improving his pain. *Id.* He was provided crutches and referred to a medical provider. *Id.*

Another knee injection was scheduled for October 28, 2019, but it had to be rescheduled

because Mr. Gooch was out for a court appearance in Marion County. Dkt. 88-4 at 119.

On November 7, 2016, Mr. Gooch was seen for the third of his physical therapy sessions. Dkt. 88-1 at ¶ 17; dkt. 88-4 at 111-113. He said his left leg was feeling better and attributed the improvement to rest and staying off the leg. *Id.* He said that his knee was not popping anymore, but he had occasional pains and an itchy sensation under his knee cap. *Id.* He returned his crutches on that date and was using a cane. *Id.* He was advised to continue the stretches and avoid exercises that caused him more discomfort. *Id.* He was also advised to continue wearing the knee sleeve and his AFO. *Id.*

On November 8, 2016, Dr. Person saw Mr. Gooch for a chronic care visit, during which they discussed his hypertension, drop foot, and prior CVA. Dkt. 88-2 at 189-191. Mr. Gooch indicated he was taking his hypertension medications as prescribed and complained that he was poked by sharp object while at the county jail. *Id.* Dr. Person's assessment was hypertension and drop foot, for which Mr. Gooch was to continue wearing the AFO. Dr. Person also ordered labs because of the complaint of a puncture wound. *Id.*

On November 29, 2016, at his fourth physical therapy session, Mr. Gooch reported doing the therapy exercises and that he had been going to recreation 2-3x/week and riding the bike. Dkt. 88-4 at 103. He stated his knee was "bearable," but still gave him problems and he believed it needed to be looked at more closely. *Id.* Mr. Gooch's left knee range of motion remained within normal limits. *Id.* He stated that he believed his left AFO was allowing his left foot to "drop" a little and wondered if some rubber pieces at the ankle/foot articulation might need to be replaced. *Id.* Ms. Miller examined the orthosis and stated that she agreed that the orthotist/prosthetist might be able to troubleshoot any problems with his orthosis more effectively. *Id.* She reported that Mr. Gooch had no further need for physical therapy at this time and he was advised to continue the

exercises and to see the doctor for further concerns. *Id.*

On November 30, 2016, Mr. Gooch submitted a HCRF stating he believed his AFO needed repairs. Dkt. 88-2 at 57. He stated he had discussed this with the physical therapist. *Id.* He then signed a refusal of treatment stating he would wait for his annual medical review to discuss the need for any repairs to his AFO.  Dkt. 88-2 at 58; dkt. 88-4 at 102.

On December 13, 2016, Nurse Collins spoke to Mr. Gooch in response to his December 12, 2016, HCRF in which he stated he continued to have knee problems after his August 31 fall. Dkt. 88-2 at 55. He stated that he was waiting to see a physician to have him seen by an outside specialist. *Id.* Nurse Collins reported to Mr. Gooch that no outside visits were currently scheduled and that he should discuss his request with his medical provider at his next chronic care clinic visit. *Id.,* dkt. 88-4 at 100.

At all relevant times, Nurse Collins was employed as the chronic care nurse at CIF. Dkt. 88-8 at ¶ 2. Although she was not generally involved with direct patient care as the chronic care nurse, she would occasionally fill in as a floor nurse if needed. Dkt. 88-8 at ¶ 5. A floor nurse was responsible for patient triage, medication administration, communicating with the treating physician, patient education, and completing physician orders. *Id.* Nurse Collins did not prescribe medications or order repairs to medical devices. *Id.* She did not formulate treatment plans or override the medical judgment of the medical providers. *Id.*

On December 18, 2016, Mr. Gooch saw a nurse in response to complaints of knee pain. Dkt. 88-4 at 97-99. The nurse noted that there was no swelling at that time, but referred Mr. Gooch to a provider for evaluation. *Id.*

On December 23, 2016, Mr. Gooch saw Dr. Person for his complaints of knee pain. Dkt. 88-4 at 91-93. Dr. Person submitted a request for outside orthopedic consultation noting that Mr.

Gooch experienced a CVA which resulted in left foot drop and use of an AFO. Dkt. 88-4 at 94-96. Mr. Gooch continued to report knee pain and instability on the left knee, pain behind the knee in the popliteal region and pain under the patella. *Id.* Dr. Person reported that Mr. Gooch's knee ligaments were stable, but the musculature was weak secondary to the CVA. *Id.* He had been through a course of physical therapy and Dr. Person stated he needed some help to determine if there was anything else that might improve Mr. Gooch's pain/mobility. *Id.*

On December 27, 2016, the Utilization Management review responded to Dr. Person's request for an outside orthopedic consultation with an alternative treatment plan that, as Mr. Gooch's knee weakness appeared to be secondary to a CVA, physical therapy and home exercise program should be continued. Dkt. 88-2 at 217. On December 28, 2016, Ms. King made an administrative note of the alternative treatment plan. Dkt. 88-4 at 90.

On January 3, 2017, Mr. Gooch submitted a HCRF stating that he would like to request an MRI of his left knee. Dkt. 88-2 at 51. Nurse Collins responded that he should discuss this at his next chronic care clinic visit. Dkt. 88-4 at 88.

On January 11, 2017, Mr. Gooch submitted another HCRF for knee pain. He was seen by Melissa Lawrence, RN, who noted that Mr. Gooch was using compression hose, had an AFO, and a cane. Dkt. 88-4 at 85-87. Nurse Lawrence noted that it appeared a request for outside consultation had been submitted. *Id.* She recommended crutches and referred Mr. Gooch for a provider visit. *Id.*

On February 2, 2017, Mr. Gooch's bottom bunk/bottom range status was renewed. The order was transcribed by Jamalee Edwards. Dkt. 88-4 at 71. At all relevant times, Ms. Edwards was a nursing assistant at CIF. Dkt. 88-6 at ¶ 2. Ms. Edwards did not have the authority to order that a patient receive an outside referral. Dkt. 88-6 at ¶ 9. At most, Ms. Edwards could forward a

patient's request to a physician or the administration and seek a response. *Id.*

On February 8, 2017, Mr. Gooch was seen for a chronic care visit with Dr. Person who noted his history of a CVA, hypertension, right foot drop, and pain in his right knee. Dkt. 88-4 at 65-67. Dr. Person noted that he had requested an outside orthopedic consultation for Mr. Gooch, but received an alternative treatment plan. *Id.* Dr. Person noted that Mr. Gooch was using crutches at that time. He ordered a short-term prescription of Tylenol 3 to determine if increased pain medication would provide any relief. Dkt. 88-5 at ¶ 21. Mr. Gooch was also receiving a low-dose of aspirin, Lisinopril, Prilosec and Zocor. *Id.* Ms. Edwards took Mr. Gooch's vital signs. Dkt. 88-4 at 66.

On February 17, 2017, Dr. Person submitted a second outpatient request for an orthopedic consultation based on Mr. Gooch's continued complaints of left knee instability and pain. Dkt. 88-2 at 247-48. Dr. Person noted that the response to his prior request for consultation submitted on December 23, 2016, was the alternative treatment plan of continuing physical therapy and home exercise plan. *Id.* Dr. Person noted that although an orthopedic specialist might not have much to offer either, Dr. Person still would like an outside opinion on whether there was any treatment that might improve Mr. Gooch's reported pain and ability to ambulate. *Id.*

On February 21, 2017, the second request for an outside orthopedic consultation was approved. The approval was recorded by Ms. King. Dkt. 88-4 at 63. On February 22, 2017, Ms. King entered a note stating that an outside orthopedic appointment with Dr. Henderson at Eskenazi Health Orthopedics was scheduled for March 8, 2017. Dkt. 88-4 at 62. Eskenazi Health Orthopedics later called needing to reschedule the appointment to March 10, 2017. Dkt. 88-4 at 60.

On February 27, 2017, Dr. Person entered an order for Mr. Gooch to receive a bottom

bunk, bottom range, and a cane permit for six months. Dkt. 88-5 at ¶ 23.

On February 24, 2017, Mr. Gooch submitted a HCRF asking how long it would be before his AFO would be serviced because it was "not performing like it should be." Dkt. 88-2 at 41; dkt. 88-7 at 7. Ms. King reviewed Mr. Gooch's medical records and spoke with Dr. Person about the response to Mr. Gooch's request about his AFO. Dkt. 88-7 at ¶ 7. The recommendation was that he wait for his outside orthopedist appointment and address any questions or concerns about his AFO with the orthopedist. *Id.* Ms. King entered the response to Mr. Gooch's HCRF on March 7, 2017, stating that Mr. Gooch was scheduled to see an orthopedic specialist and that he should wait to hear what the specialist said before anything else was done. *Id.*; dkt. 88-2 at 41.

On March 10, 2017, Mr. Gooch was seen by the outside orthopedist, Dr. Roy Henderson. Dkt. 88-3 at 5-9. Dr. Henderson filed a report stating:

> He fell off stairs August 2016 and twisted knee. Knee swells off and on. Has pain - a burning sensation under patella. Knee feels unstable. On exam, ligaments seem to be intact. ROM - lacks [about] 20 degrees of extension; flexion to 130 degrees. X-rays show small enthesophyte at superior pole of patella and maybe very mild narrowing of patellofemoral compartment. Exam also shows muscle atrophy of quadriceps and some weakness [with] knee flexion/extension.
>
> I think symptoms are due to patellar instability due to muscle weakness in quadriceps. I would recommend PT for this, but I see that PT feels there is nothing else she can offer. Only other thing would be to consider knee MRI.

*Id.*

Dr. Henderson believed Mr. Gooch's symptoms were due to patellar instability due to muscle weakness in quadriceps. *Id.* He believed physical therapy was the best course of treatment. *Id.* He noted, however, that the physical therapist felt she had done all she could do. *Id.* Therefore, the only other option he would consider would be an MRI of the left knee "to see if he has a meniscus tear or other pathology." Dkt. 88-3 at 8. Dr. Henderson noted, however, that he was not ordering an MRI at this time. *Id.* There was no mention in the report of any discussion concerning

a repair of Mr. Gooch's AFO. Mr. Gooch states that Dr. Henderson refused to talk to him about the AFO because he was only there for an evaluation of his knee. Dkt. 148-1 at ¶ 14. On March 14, 2017, Ms. King entered an administrative note stating the offsite consult report had been entered. Dkt. 88-4 at 50.

On March 15, 2017, Mr. Gooch was seen for a nurse visit in response to his HCRF in which he stated that he objected to a work assignment as he was "having issues with my left side weakness and standing limitations. Also the issues with my knee problems. They're trying to make me work not knowing my condition." Dkt. 88-4 at 48. In response, Dr. Person granted Mr. Gooch a "medical idle" for 90 days. *Id.*

On March 10, 2017, Mr. Gooch submitted a HCRF asking to see Dr. Person because the outside orthopedist had stated to him during his appointment that day, "something about an MRI to really get to the source of my knee pain." Dkt. 88-2 at 38. Nurse Collins responded to the HCRF on March 16, 2017, reporting that Mr. Gooch was scheduled to be seen by a provider to review the recommendations from the outside appointment. *Id.*

On March 14, 2017, Dr. Person submitted an outside provider request that Mr. Gooch be scheduled for an MRI of his left knee. Dkt. 88-3 at 15. The request was approved on March 17, 2017, and Ms. King updated the chart noting the approval. Dkt. 88-3 at 14.

 On March 16, 2017, Mr. Gooch submitted a HCRF in which he stated: "My AFO needs to be serviced. And, also, I need a follow-up with the doctor concerning my knee." Dkt. 88-2 at 37. The next day, in reviewing Mr. Gooch's medical records to determine the response, Ms. Collins noted that Dr. Person had requested that Mr. Gooch be seen by an outside provider for an MRI and that he was scheduled for a provider visit on March 28, 2017. Dkt. 88-8 at ¶ 9. Therefore, she responded to Mr. Gooch's March 16, 2017, HCRF by stating, "you are scheduled." *Id.*; dkt. 88-2

at 37. Both Mr. Gooch's concern about his knee pain and his issue with an AFO repair needed to be addressed by a medical provider. Dkt. 88-8 at ¶ 9. His provider visit had to be rescheduled from March 28, 2017 to April 12, 2017, because no doctor was available. Dkt. 88-4 at 39. Mr. Gooch did not show up for the April 12, 2017, appointment. Dkt. 88-4 at 30.

On March 20, 2017, Ms. King entered a note that Mr. Gooch was scheduled for an MRI appointment at St. Vincent Anderson Regional on April 6, 2017. Dkt. 88-4 at 44.

On March 24, 2017, Nurse Collins responded by phone to Mr. Gooch's HCRF in which he stated that he wanted to discuss pain medications. Dkt. 88-4 at 40. She advised Mr. Gooch to discuss his thoughts on pain medications with the medical provider at his upcoming scheduled appointment. *Id.*

On April 6, 2017, Mr. Gooch was taken to St. Vincent for an MRI of his left knee. Dkt. 88-1 at ¶ 39. The results of his MRI were that his meniscus and cruciate ligaments were intact. Dkt. 88-3 at 35-36. No joint effusion or other significant abnormality was identified. Dkt. 88-3 at 36; dkt. 88-5 at ¶ 27. A small area of cartilage loss at the superior femoral trochlear groove was noted. *Id.*

On April 21, 2017, Mr. Gooch submitted a HCRF stating that he needed his AFO serviced because he believed it was not performing as it should, and he was "tripping a little." Dkt. 88-2 at 27. He also stated that he had had the device for a year and a half, and he had been told that the springs should be replaced once a year. *Id.* Ms. Edwards presented the request to Dr. Person. Dkt. 88-6 at ¶ 6. Dr. Person responded to the HCRF by stating that he would need to see the AFO because it might require an outside provider request. Dr. Person initialed the response "MEP." Dkt. 88-2 at 27; dkt. 88-6 at ¶ 6; dkt. 88-5 at ¶ 31. Ms. Edwards entered the HCRF in the electronic medical record. Dkt. 88-2 at 27; dkt. 88-3 at 71; dkt. 88-6 at ¶ 6.

On May 8, 2017, Mr. Gooch was seen by Dr. Person for a chronic care visit. His current conditions were noted as high blood pressure and left sided weakness related to the CVA. Dkt. 88-3 at 239-40. His left knee was noted as tender with no edema. Dkt. 88-4 at 1-2. Mr. Gooch had his AFO on his left foot. *Id.* Dr. Person continued Mr. Gooch's medical idle for 90 days. *Id.* There is no record that Mr. Gooch complained about any problem with his AFO at this appointment. Dkt. 88-5 at ¶ 32. This was Dr. Person's final appointment with Mr. Gooch and he had no further involvement with Mr. Gooch's medical care after this date. Dkt. 88-5 at ¶ 33. Dr. Person left his employment at CIF on May 20, 2017. Dkt. 88-5 at ¶ 35.

On May 23, 2017, Mr. Gooch was seen for a nurse visit by Jill Johnson, RN, as he reported that he had fallen down some stairs when he got "caught up on" his leg brace. Dkt. 88-3 at 222-224. He stated he had "increased pain with movement." *Id.* Ms. Johnson's examination of his left knee reflected that Mr. Gooch had full range of motion, no signs of wounds, swelling, redness or obvious deformities, but he was unable to bear weight. *Id.* He was provided crutches, elastic bandage, and ice. *Id.*; dkt. 88-9 at 17-18 at 66-69. He did not request pain medication, and none was prescribed. Dkt. 88-1 at ¶ 43. He was referred for follow-up in three days. Dkt. 88-3 at 224. Mr. Gooch also submitted an informal grievance complaining that he had been asking for the repair of his AFO for months, but the providers had not called him over. Dkt. 148-1 at 17.

On May 26, 2017, a chart update was entered by Melissa Lawrence, RN, stating that Dana Miller, PT was present and she evaluated Mr. Gooch's AFO. Dkt. 88-3 at 219. Ms. Miller stated the hinges needed to be replaced, but not the entire AFO. *Id.* Mr. Gooch stated that he would prefer to keep his current AFO as it fit well, but he wanted to have repairs done. *Id.* Ms. Lawrence emailed Nurse Collins to relay the repair request. *Id.*

On May 30, 2017, Nurse Collins entered a chart update stating that she had submitted an outside provider request per medical provider approval to have the springs in Mr. Gooch's AFO

repaired if possible. Dkt. 88-3 at 213-215, 219; dkt. 88-8 at ¶¶ 12-13. HSA Bergeson responded to Mr. Gooch's informal grievance that a nurse practitioner had submitted a request for repair and that hopefully they would get a quick answer. Dkt. 148-1 at 17.

On June 14, 2017, Mr. Gooch submitted a HCRF complaining about shoulder pain. When he was scheduled for a nurse visit, he said he would just wait for his shoulder to heal and signed a refusal of care form. Dkt. 88-1 at ¶ 46. On June 19, 2017, he submitted another HCRF stating that his arm still hurt from his May 23 fall. Dkt. 88-1 at ¶ 47. On June 21, 2017, Mr. Gooch was seen for a provider visit for left arm pain. As there was no bruising or swelling, and Mr. Gooch had good range of motion in the left arm with no sign of injury, he was advised by Nurse Practitioner L. Dawson to continue with Tylenol. Dkt. 88-1 at ¶ 48; dkt. 88-3 at 200-202.

On July 6, 2017, Mr. Gooch was seen by Robin Young of the Hanger Clinic for an in-facility evaluation of repair to his left foot AFO. Dkt. 88-3 at 195. Ms. Young took the AFO to her workshop for repair and stated it would be shipped back to the facility. *Id.*

On July 21, 2017, Mr. Gooch received his repaired AFO. Dkt. 88-3 at 186. Mr. Gooch did not complain of any further knee pain, left arm pain, or difficulty with his AFO prior to his transfer to the Federal Bureau of Prisons (BOP) on August 8, 2017. Dkt. 88-1 at ¶ 53. Mr. Gooch was discharged from the Indiana Department of Correction (IDOC) on August 13, 2017. Dkt. 88-9 at 3 at 12:11-15.

No medical provider at the BOP has recommended surgery for Mr. Gooch's knee. Dkt. 88-9 at 21 at 83:10. Mr. Gooch testified in his affidavit that while in federal prison he was fitted with a custom knee brace that helps to alleviate his knee pain. Dkt. 148-1 at ¶ 44. The brace improved his knee function and reduced his pain. *Id.*

**B. Analysis**

Mr. Gooch contends that the defendants were deliberately indifferent to his knee pain and to his requests to have his AFO repaired. To prove that the defendants were deliberately indifferent to a serious medical need under the Eighth Amendment, Mr. Gooch must "establish that he suffered from an objectively serious medical condition and that the defendant was deliberately indifferent to that condition." *Wilson v. Adams*, 901 F.3d 816, 820 (7th Cir. 2018) (internal quotation omitted). To determine whether a defendant "acted with deliberate indifference, [the Court] look[s] into his or her subjective state of mind." *Id.* (internal quotation omitted). "An official is deliberately indifferent when he disregards a known condition that poses an excessive risk to inmate health or safety." *Id.* (internal quotation omitted). "Mere negligence or malpractice is insufficient." *Id.* In addition, "mere disagreement with a doctor's medical judgment is not enough to support an Eighth Amendment violation." *Cesal v. Moats*, 851 F.3d 714, 722 (7th Cir. 2017) (internal quotation omitted).

*Defendant Edwards*

Mr. Gooch's claim against Ms. Edwards is based on a mistake. Mr. Gooch believed that medical assistant Edwards responded to his health care request of April 2017, asking to have his AFO fixed or repaired, by stating, "I need to see it." Dkt. 52 at 4 (Third Amended Complaint); dkt. 88-9 at 9 at 34:1-15. In fact, Dr. Person was the individual who wrote the note, "need to see it." Dkt. 88-2 at 27; dkt. 88-5 at ¶ 31.

Ms. Edwards forwarded health care requests to medical providers or administrators to obtain a response. She did not have the authority to initiate any orders for outside referrals or to have an orthosis repaired.

Mr. Gooch has not presented any evidence showing that Ms. Edwards was deliberately

indifferent to his serious medical needs. Therefore, Ms. Edwards is entitled to summary judgment.

*Defendant King*

Ms. King was an administrative assistant at CIF. Mr. Gooch alleges that Ms. King was deliberately indifferent to his serious medical needs by failing to follow up on his February 24, 2017, health care request seeking the repair of his AFO. Dkt. 52; dkt. 88-7 at ¶ 4. Ms. King scheduled outside specialist appointments when directed by medical providers. She also sometimes responded to health care requests after she reviewed medical records and conferred with a provider or nurse. She did not have the authority to recommend or order any repairs to Mr. Gooch's AFO.

On February 24, 2017, Mr. Gooch submitted a HCRF asking how long before his AFO would be serviced. Ms. King reviewed his medical records and spoke to Dr. Person. The recommendation was that Mr. Gooch wait for the outside orthopedist appointment and so he could address any concerns regarding the AFO at that time. Ms. King wrote that response on the HCRF on March 7, 2017, and Mr. Gooch was seen by the specialist on March 10, 2017.

No reasonable jury could find that Ms. King's response to Mr. Gooch's February 24, 2017, health care request was improper or incomplete. Moreover, Mr. Gooch has not presented any evidence that Ms. King was deliberately indifferent to any of his serious medical needs. Ms. King is entitled to summary judgment.

*Defendant Collins*

Mr. Gooch alleges that Nurse Collins scheduled him to have the problem with his AFO resolved on March 17, 2017, but failed to follow up. Dkt. 52 at 4. He testified that he is suing Nurse Collins because he wanted her to fix his AFO sooner. Dkt. 91-2 at 4 at 39:16-22.

Nurse Collins did not have the authority to prescribe medications or order repairs to medical devices. On March 16, 2017, Mr. Gooch submitted a HCRF asking for his AFO to be serviced and for follow-up with the doctor concerning his knee. Ms. Collins reviewed Mr. Gooch's medical records and noted that Dr. Person had requested that Mr. Gooch be given an MRI and that he was scheduled for a provider visit on March 28, 2017. She responded to the March 16, 2017, HCRF the next day by letting Mr. Gooch know that he was scheduled.

Mr. Gooch fell down some stairs on May 23, 2017. He was seen by nursing staff. On May 26, 2017, Dana Miller, physical therapist, verbally approved a request for the AFO repair. Nurse Collins was asked to submit an outsider provider request and she did so on May 30, 2017.

Mr. Gooch has not demonstrated that Nurse Collins refused or failed to convey his requests for health care nor he has shown that she was deliberately indifferent to a serious medical need. She is entitled to summary judgment.

### Defendant Bergeson

Mr. Gooch alleges in his amended complaint that Nurse Bergeson was notified about his request for repairs to his AFO but she "refused to take action." Dkt. 52 at 3. He further alleges in response to his many complaints about knee pain that she told him that medical could not do anything for him. *Id.* at 7. He testified in his deposition that Ms. Bergeson told him that to receive a repair of his AFO he would need to go through a provider. Dkt. 88-9 at 8 at 29:1-9. He further testified that he believed that Ms. Bergeson had the authority to fix his knee and AFO but admitted that he did not know exactly what her responsibilities were at CIF. Dkt. 88-9 at 8 at 30:11-16.

Ms. Bergeson was a nurse at CIF until she became the HSA on January 8, 2017. As a nurse, she did not have the authority to prescribe medications or order repairs to medical devices. She also did not formulate treatment plans or override decisions made by physicians. As the HSA,

she oversaw the administrative functions of the prison clinic, but did not treat or interact with patients. She responded to grievances submitted by inmates regarding their health care, but had no authority to dictate an inmate's medical treatment. There is no evidence that Ms. Bergeson ever refused to communicate Mr. Gooch's medical needs to his medical providers when it was her responsibility to do so.

Mr. Gooch has presented no evidence that Ms. Bergeson was deliberately indifferent to any serious medical need. She is entitled to summary judgment.

*Defendant Dr. Person*

Mr. Gooch testified in his deposition and his affidavit that on May 8, 2017, after reviewing the MRI, Dr. Person told him that he believed that surgery could be an option for treating his knee. Dkt. 148-1 at ¶ 16. Mr. Gooch testified that he was basing this whole action on Dr. Person's statement about surgery. Dkt. 88-9 at 14 at 54:1-5. He asserts in his affidavit that he was never evaluated for surgery. Dkt. 148-1 at ¶ 16.

The medical records, however, reflect that no recommendation was ever made for surgery on Mr. Gooch's knee. Mr. Gooch admits in his deposition that no medical provider ever wrote in a record that his knee required surgery. Dkt. 88-9 at 14 at 55:1-4. The orthopedic specialist, Dr. Henderson, saw Mr. Gooch on March 10, 2017, and opined that Mr. Gooch's pain was most likely due to patellar instability resulting from muscle weakness in his quadricep. Dr. Henderson recommended physical therapy, but acknowledged that the physical therapist felt there was nothing more she could offer. Dr. Henderson did not recommend surgery. Dr. Henderson indicated that the only other thing he would consider would be an MRI.

Mr. Gooch had an MRI on April 6, 2017, which revealed a small area of cartilage loss to the knee, but no significant abnormality. The MRI indicated that the menisci and cruciate

ligaments were intact. Even if Dr. Person had told Mr. Gooch that surgery might help, there is no evidence that surgery could have, in fact, helped Mr. Gooch's knee pain. To this date, no medical provider has prescribed surgery. To the extent Mr. Gooch bases his claim against Dr. Person on the failure to provide surgery, no reasonable jury could find deliberate indifference in that regard.

The Court has considered whether Dr. Person was otherwise deliberately indifferent to Mr. Gooch's knee pain. It is Dr. Person's opinion, to a reasonable degree of medical certainty, that the primary cause of Mr. Gooch's knee, ankle, foot, and leg discomfort was related to his prior stroke (CVA). Dkt. 88-5 at ¶ 45. Dr. Person testified that ongoing and chronic muscle weakness and leg discomfort is a common side effect of a stroke. *Id.* Mr. Gooch has experienced knee discomfort since his CVA in the 1990's. *Id.* He also has ongoing muscle atrophy/weakness and foot drop. *Id.*

The record is undisputed that each time Mr. Gooch saw Dr. Person after the August 31, 2016, fall (which was not caused by any instability with the AFO), Dr. Person responded to his complaints of knee pain with prescriptions for pain medications, a knee brace, injections, a referral for physical therapy, two referrals for an orthopedic specialist (the first of which was denied), writing two orders relieving him of his work assignment, and requesting and obtaining approval for an MRI. Dr. Person exercised his medical judgment and ordered various types of treatment in an effort to reduce Mr. Gooch's pain. The orthopedic specialist agreed with Dr. Person in concluding that physical therapy was the appropriate treatment. In addition, the MRI revealed no significant abnormalities. This treatment was provided beginning on September 8, 2016, through May 2017, when Dr. Person left his employment at CIF. Under these circumstances, no reasonable jury could find that Dr. Person was deliberately indifferent to Mr. Gooch's complaints of knee pain.

With respect to his AFO, Mr. Gooch testified in his affidavit that during his May 3, 2016, chronic care visit he told "Medical Staff" that he had concerns that his AFO was malfunctioning, and that he met with Dr. Person during that visit. Dkt. 148-1 at ¶ 24. Mr. Gooch stated generally during his deposition that he told Dr. Person during his chronic care visits that his AFO was weakening and needed to be fixed. Dkt. 91-2 at 17 at 107:11-15. Dr. Person testified in his affidavit that Mr. Gooch never told him directly that his AFO needed to be repaired. Dkt. 88-5 at ¶ 48. This appears to be parsing words, however, because administrative assistant King testified in her affidavit that she spoke with Dr. Person about Mr. Gooch's February 24, 2017, question about when his AFO would be serviced. The determination then was that Mr. Gooch should wait until he saw the specialist and address his questions then. No reasonable jury could find that Dr. Person was deliberately indifferent to the request about his AFO at that time.

In response to a HCRF Mr. Gooch submitted on April 21, 2017 complaining about the springs in his AFO, Dr. Person stated that he would need to see the AFO before he could make a referral. Mr. Gooch saw Dr. Person one more time, at his May 8, 2017, appointment, but there is no evidence of any discussion of the AFO at that time.

A reasonable jury could find that Dr. Person was aware that Mr. Gooch believed his AFO needed repairs. As a provider, Dr. Person was one of the few individuals who could order a referral for the repair. The Court finds, however, that this does not require a finding that Dr. Person was deliberately indifferent to a serious medical condition.

To be found liable under the Eighth Amendment, Dr. Person "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Lockett v. Bonson,* No. 19-1012, 2019 WL 4051867 at *4 (7th Cir. Aug. 28, 2019) (internal quotation omitted). "That standard is a rigorous one." *Id.* In making the assessment of whether a defendant acted with the required state of mind, "we must examine

the totality of an inmate's medical care." *Id.* There is no evidence that Dr. Person inferred, or believed, that any "substantial risk of serious harm" existed in relation to the AFO. While an AFO may assist in ambulation, it is Dr. Person's opinion that an orthosis is not required and that many patients with foot drop are able to ambulate normally without an orthosis. Dkt. 88-5 at ¶ 51. In Dr. Person's opinion, an orthosis is simply meant to be an assistive device, but is not a medical necessity. *Id.* In addition, Dr. Person was aware that the orthopedic specialist made no orders relating to the AFO. *Id.*

"It is true that delays in care for non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Mitchell v. Kallas*, 895 F.3d 492, 500 (7th Cir. 2018) (internal quotation omitted). "Yet prisons have limited resources, and that fact makes some delay inevitable." *Id.* Here, it is reasonable to assume that if the AFO had been repaired sooner, Mr. Gooch's May 23, 2017, fall might have been prevented. At most, however, Mr. Gooch may have shown negligence on the part of Dr. Person when he did not inspect the AFO on May 8. There is no evidence that Dr. Person refused to inspect the AFO during that last appointment. Nor would that be consistent with Dr. Person's other efforts to treat Mr. Gooch's knee pain. Negligence, however, is not enough to establish a claim of deliberate indifference against Dr. Person, or any other defendant for that matter. *Cesal*, 851 F.3d at 722. Therefore, Dr. Person is entitled to summary judgment on the claims relating to Mr. Gooch's knee pain and need for the AFO repair.

### Defendants Corizon and Wexford

A plaintiff can bring a *Monell*-style claim against a private corporation, such as Corizon or Wexford, acting under color of state law. *Wilson v. Wexford Health Sources, Inc.,* 932 F.3d 513, 521 (7th Cir. 2019); *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 664 (7th Cir. 2016).

To be liable, Corizon or Wexford "must have 'maintained an unconstitutional policy or custom.'" *Gabb v. Wexford Health Sources, Inc.,* No. 18-2351, 2019 WL 2498640 at *5 (7th Cir. June 17, 2019) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 780 (7th Cir. 2015)). That unconstitutional policy, practice, or custom must be "the moving force of the constitutional violation." *Wilson,* 932 F.3d 521 (internal quotation omitted); *Whiting¸* 839 F.3d at 664; *see also Woodward v. Corr.*, *Med. Servs. of Ill., Inc.*, 368 F.3d 917, 928 (7th Cir. 2004).

Mr. Gooch argues that Corizon denied Dr. Person's first request for an outside orthopedist based on a determination that further evaluation was not necessary. In support of his belief that further evaluation was necessary, he asserts that he obtained an extensive evaluation of his knee once he arrived at federal prison and then was fitted for a custom knee brace, which has improved his knee function and reduced his pain. Mr. Gooch has arguably mischaracterized Corizon's response to Dr. Person's first request for an appointment with a specialist. Corizon did not conclude that no further evaluation was necessary. Rather, it recommended an alternative treatment plan of continuing physical therapy at that time. Even if Mr. Gooch's assertion is a fair one, he has not demonstrated deliberate indifference.

Corizon determined that Mr. Gooch's ongoing muscle weakness and discomfort was likely a residual cause of his prior CVA. The recommendation that Mr. Gooch continue with physical therapy has not been shown to lack a medical basis. *See Mitchell v. Kallas,* 895 F.3d 492, 501 (7th Cir. 2018) (a medical provider is not liable if he exercises individualized medical judgment in determining a course of treatment as opposed to applying a blanket policy); *see also Burton v. Downey,* 805 F.3d 776, 785 (7th Cir. 2015) (plaintiff must show defendants' refusal to prescribe a certain treatment "was such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on

such a judgment.") (internal quotation omitted). In addition, there was no policy of denying all outside referrals because when Dr. Person renewed his request, the request was approved.

As has been noted above, to the extent the Court can infer that there was a disagreement between the providers at CIF and the providers Mr. Gooch later saw in federal prison, that does not prove a claim of deliberate indifference. *Mitchell,* 895 F.3d at 501 ("Neither professional disagreement nor medical malpractice constitutes deliberate indifference."). No reasonable jury could find that an unconstitutional policy caused him injury under these circumstances. Corizon and Wexford are therefore entitled to summary judgment.

## IV. Conclusion

"Although an inmate is not entitled to demand specific care and is not entitled to the best care possible, he is entitled to reasonable measures to meet a substantial risk of serious harm." *Arnett v. Webster,* 658 F.3d 742, 754 (7th Cir. 2011); *Grund v. Murphy*, 736 F. App'x 601, 604 (7th Cir. 2018) ("A prisoner is entitled to reasonable measures to prevent a serious risk of harm, but she is not entitled to the best care possible.") (internal quotation omitted). No reasonable jury could find that Mr. Gooch did not receive reasonable medical treatment for his knee while at CIF.

For the reasons discussed above, the moving defendants are entitled to judgment as a matter of law. Accordingly, the motion for summary judgment filed by defendants Person, Bergeson, Edwards, Collins, King, Corizon, and Wexford, dkt. [85], is **granted.**

Judgment consistent with this Entry and with the Entry granting Dana Miller's motion for summary judgment, shall now issue.

**IT IS SO ORDERED.**

Date:     9/27/2019

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

CHARLES GOOCH
31705068
ELKTON FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 10
LISBON, OH 44432

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Alan S. Brown
FROST BROWN TODD LLC (Indianapolis)
abrown@fbtlaw.com

Amanda C. Couture
OGLETREE DEAKINS NASH SMOAK & STEWART, P.C. (Indianapolis)
amanda.couture@ogletreedeakins.com

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

Mary L. Graham
BLEEKE DILLON CRANDALL ATTORNEYS
mary@bleekedilloncrandall.com

Chelsea Steele Hyslop
FROST BROWN TODD LLC (Indianapolis)
chyslop@fbtlaw.com

Jan S. Michelsen
OGLETREE DEAKINS NASH SMOAK & STEWART, P.C. (Indianapolis)
jan.michelsen@odnss.com